**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 01-30282
_____


In the Matter of:
ADVANCED SYSTEMS, INC.,

Debtor.

- - - - - - - - - - - - - - - - -


PARISH NATIONAL BANK,

Appellant
— Cross-Appellee,


versus


ADVANCED SYSTEMS, INC.,

Appellant,


versus


HISTORIC CONSTRUCTION, INC.;
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

Appellees
— Cross-Appellants.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana
(No. 00-CV-2985-R)
_____

April 23, 2002

Before ALDISERT,[*] DAVIS and PARKER, Circuit Judges.

PER CURIAM:[**]

Parish National Bank (PNB) appeals the bankruptcy court's determination of the amount Historic Construction, Inc. (HCI), owes PNB's debtor, Advanced Systems, Inc. (ASI). HCI cross appeals the court's finding that it is not entitled to certain setoffs. ASI also cross appeals, claiming that HCI must return its equipment. Having reviewed the record, we affirm in part and reverse in part.

## BACKGROUND

HCI was the general contractor on a New Orleans project and hired ASI as one of its subcontractors, making the company responsible for odd jobs around the work site. At some point, it determined that ASI was capable of performing more substantial projects and hired the company as its gypsum board ("sheetrock") subcontractor. ASI had never before committed to a project as large as the one it agreed to do for HCI. The contract between the two companies provided that ASI could not assign its contractual responsibilities to a third party; that HCI would keep a portion of the payment due ASI each month--the

---

[*] Circuit Judge of the Third Circuit, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-2-

"retainage"--until ASI had completely fulfilled its responsibilities under the contract; that HCI was entitled to pay ASI's materials suppliers itself if ASI did not; and that HCI could seize ASI's equipment if ASI failed to perform. No party disputes that the contract was enforceable from March 1997 forward, notwithstanding ASI's not having executed it until later.

In March 1997, ASI entered into an agreement with PNB calling for the bank to extend ASI a $200,000 line of credit. In exchange, PNB received a security interest in certain of ASI's accounts receivable. PNB perfected a security interest in the receivables shortly thereafter. In a June 11, 1997 letter, PNB notified HCI of its interest in the receivables. HCI contacted PNB by phone to object to the assignment as violative of the terms of the HCI-ASI contract.

On August 7, 1997, HCI sent a letter notifying ASI that it was in default on the project. HCI's letter noted a number of areas were ASI had fallen short of its responsibilities, but chief among them was failing to pay its suppliers and employees. Shortly after HCI sent ASI the default letter, HCI took over much of ASI's responsibilities itself, including the payment and supervision of employees and paying suppliers. On September 5, 1997, PNB loaned HCI $30,334 to cover its payroll expenses. PNB perfected additional security interests in ASI's equipment and receivables.

Save one payment for $68,936, HCI did not pay any of ASI's invoices past May 1997. On October 27, 1997, PNB initiated suit against HCI in Louisiana state court, seeking to enforce its interest in ASI's receivables. HCI terminated ASI December 4, 1997. About a month later ASI filed for bankruptcy. PNB's claims were consolidated with the proceeding in bankruptcy court. After a five-day trial, the bankruptcy court found that PNB was due $44,854 from HCI. Among other things, the court found that ASI had performed $188,349 in work from May 1997 until when ASI was terminated; that HCI was entitled to keep the $75,559 in retainage it forgot to deduct before May 1997; that PNB could not recover from HCI the $30,334 it advanced ASI; that HCI was not entitled to a credit for the $24,982 it paid ASI's suppliers; and that ASI was not entitled to return of its equipment, which was seized by HCI. On appeal, the district court affirmed in all respects. The district court also found that the evidence was insufficient to conclude that National Union Fire Insurance Company, through whom HCI got a performance bond, was liable to PNB. PNB now appeals, and HCI and ASI have taken cross appeals.

## DISCUSSION

We affirm the judgment of the district court with the following exceptions.

1. HCI is entitled to a setoff for the amount it paid ASI's materials suppliers. Although § 9-318(3) of the U.C.C.

-4-

states that an account debtor must pay the account assignee, rather than the assignor, upon receiving notice of the assignment, subsection (1)(A) of that same provision also provides that "the rights of an assignee are subject to . . . all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom." *Cf.* LA. REV. STAT. ANN. § 10:9-318(3)(1993) *with id.* § 10:9-318(1)(a). The contract in this case specifically states: "Should Subcontractor at any time fail to pay all labor, materials or supplies used by Subcontractor in work when done, Contractor may pay for same and charge to Subcontractor, without Subcontractor's consent." Stated differently, the contractual provision permitting HCI to pay ASI's materials suppliers directly and to receive a credit for the amount paid is enforceable against PNB, the assignee. HCI is therefore entitled to a credit of $24,982, the cost of the materials.

2. ASI is entitled to return of its equipment. The contract provides that if ASI cannot complete performance on the contract HCI can "enter upon the premises and take possession, for the use of completing the work, of all materials, supplies, tools, equipment and appliances of [ASI] thereon and complete the work . . . and be liable to [ASI] for no further payment under this agreement . . . ." The phrase "for the use of completing the work" limits the conditions under which HCI may take

-5-

possession of ASI's equipment and supplies, the word "for" in this case meaning "in order to" or "with the object of." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 886 (1981). The district court apparently construed a different phrase--"and be liable to Subcontractor for no further payment"--to mean that HCI was not bound to return the equipment once it had completed the work. We conclude that this construction is inconsistent with the basis under which HCI was allowed to enter and possess the equipment in the first place. We also conclude that the word "payment" should not be read in ignorance of the phrase that follows it--namely, "under this agreement." Construed together, this language means that HCI is absolved from paying ASI that which it was supposed to pay under the contract had ASI fully performed, not that HCI can keep ASI's equipment without paying for it. ASI is therefore entitled to the return of its equipment or the equipment's value, $30,600.

3. The district court erred in not dismissing National Union. Even if National Union was somehow liable to PNB for HCI's not paying PNB's debtor, the contract between the insurance company and HCI was never entered into evidence. Absent a stipulation or evidence of spoilage or some other extraordinary showing, National Union's liability cannot be established in this case.

## CONCLUSION

-6-

In accordance with the foregoing, the judgment of the district court is AFFIRMED IN PART and REVERSED IN PART.